**POMERANTZ LLP**
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
E-mail: jpafiti@pomlaw.com

*Attorney for Plaintiff*

[Additional Counsel on Signature Page]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEX SWARTZENDRUBER, Individually and On Behalf of All Others Similarly Situated,<br>Plaintiff,<br><br>v.<br><br>COLONY CAPITAL, INC., THOMAS J. BARRACK, JR., MARK M. HEDSTROM, and DARREN J. TANGEN,<br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Alex Swartzendruber ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Colony Capital, Inc. ("Colony" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTION**

1. This is a federal securities class action on behalf of a class consisting of all persons other than Defendants who purchased or otherwise acquired Colony securities between August 9, 2019 and May 7, 2020, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Colony is a leading global investment management firm with assets under management of $55 billion. The Company manages capital on behalf of its stockholders, as well as institutional and retail investors in private funds, and traded and non-traded real estate investment trusts.

3. On August 9, 2019, Colony announced that it would sell its multi-billion dollar industrial portfolio and, potentially, its related management platform.

4. On September 30, 2019, Colony announced that Blackstone (NYSE: BX) would acquire Colony Industrial, the industrial real estate assets and affiliated industrial operating platform of the Company, for $5.9 billion.

5. On November 7, 2019, Colony Credit Real Estate (NYSE:CLNC) announced that "third party valuation experts assisted the [c]ompany in a robust strategic reassessment of [its] entire asset base," that, "[d]uring this process [the company] identified and separated a Legacy, Non-Strategic Portfolio and made meaningful changes to the original business plans," and that "[g]oing forward, [the company] plan[s] to report the operations and dispositions from [its] Core Portfolio and the Legacy, Non-Strategic Portfolio separately."

6. Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Colony's sale of its industrial real estate portfolio and the bifurcation of Colony Credit Real Estate's portfolio were

foreseeably likely to negatively impact Colony's financial and operating results; (ii) certain of Colony's remaining portfolio companies carried unsustainable levels of debt secured by hotels and healthcare-related properties and were thus at a significant risk of default; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

7. On November 8, 2019, Colony announced its financial results for the third quarter of 2019. Among other results, the Company reported a GAAP net loss of $555 million, or $1.15 per share, which "notably included reductions of goodwill, real estate and provision for loan losses totaling $540.3 million . . . of which $387.0 million was attributable to the reduction of goodwill primarily as a result of the pending sale of the Company's industrial investment management business and related real estate portfolio, and the decrease in management fees from Colony Credit Real Estate, Inc. resulting from impairments related to its portfolio bifurcation."

8. On this news, Colony's stock price fell $0.48 per share, or 8.76%, to close at $5.00 per share on November 8, 2019.

9. Then, on May 8, 2020, Colony issued a press release announcing its financial and operating results for the first quarter of 2020. In the press release, Colony reported that its portfolio companies had defaulted on $3.2 billion of debt secured by hotels and healthcare-related properties and that Colony had received a notice of acceleration covering $780 million of the defaulted debt.

10. On this news, Colony's stock price fell $0.08 per share, or 3.81%, to close at $2.02 per share on May 8, 2020.

11. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

14. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Colony is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District.

15. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

16. Plaintiff, as set forth in the attached Certification, acquired Colony securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

17. Colony is a Maryland corporation with its principal executive offices located at 515 South Flower Street, 44th Floor, Los Angeles, California 90071. Colony's securities trade in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "CLNY."

18. Defendant Thomas J. Barrack, Jr. ("Barrack") has served as Colony's Chief Executive Officer at all relevant times.

19. Defendant Mark M. Hedstrom ("Hedstrom") has served as Colony's Chief Financial Officer at all relevant times.

20. Defendant Darren J. Tangen ("Tangen") served as Colony's President at all relevant times.

21. Defendants Barrack, Hedstrom, and Tangen are sometimes referred to herein as the "Individual Defendants."

22. The Individual Defendants possessed the power and authority to control the contents of Colony's SEC filings, press releases, and other market communications. The Individual Defendants were provided with copies of Colony's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or

to cause them to be corrected. Because of their positions with Colony, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements and omissions pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

23. Colony is a leading global investment management firm with assets under management of $55 billion. The Company manages capital on behalf of its stockholders, as well as institutional and retail investors in private funds, and traded and non-traded real estate investment trusts.

### Materially False and Misleading Statements Issued During the Class Period

24. The Class Period begins on August 9, 2019, when Colony issued a press release during pre-market hours announcing its financial and operating results for its second fiscal quarter ended June 30, 2019 (the "2Q19 Press Release"). The 2Q19 Press Release also announced the Company's intended sale of its multi-billion dollar industrial portfolio, touting, in relevant part:

> [T]he Company has engaged advisors to market the Company's multi-billion dollar industrial portfolio for sale, which may include the related management platform. There has been significant appreciation in the value of our industrial portfolio driven by favorable operating fundamentals and strong investor demand for light industrial assets. As

> a result, a sale of the industrial portfolio may yield a price higher than the value that may be ascribed by the market to the industrial portfolio as part of the Company's overall valuation. The Company is seeking to complete a sale by the end of 2019, however, no assurances can be made that a sale can be completed within the timeframe contemplated, or at all. In addition, the Company continues to monetize non-strategic Other Equity and Debt investments and other non-core assets to generate liquidity and simplify the business. With these anticipated proceeds, the Company may redeploy a portion of the proceeds into higher total return strategies (e.g. digital infrastructure, emerging markets and energy) and may further consider the reduction of corporate leverage.

25. That same day, Colony filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2019 (the "2Q19 10-Q"). The 2Q19 10-Q stated, in relevant part:

> . . . the Company has engaged advisors to market the Company's multi-billion dollar industrial portfolio for sale, which may include the related management platform. There has been significant appreciation in the value of the industrial portfolio driven by favorable operating fundamentals and strong investor demand for light industrial assets. As a result, a sale of the industrial portfolio may yield a price higher than the value that may be ascribed by the market to the industrial portfolio as part of the Company's overall valuation. The Company is seeking to complete a sale by the end of 2019, however, no assurances can be made that a sale can be completed within the time frame contemplated, or at all. If a sale is completed, the Company may redeploy a portion of the proceeds into higher total return strategies (e.g., digital infrastructure, emerging markets and energy) and may further consider the reduction of corporate leverage. The planned sale of the industrial segment, including its related management platform, represents a strategic shift that will have a major effect on the Company's operations and financial results, and has met the criteria as held for sale and discontinued operations. Accordingly, for all current and prior periods presented, the related assets and liabilities are presented as assets and liabilities held for sale on the consolidated balance sheets (Note 7) and the related operating results are presented as income from discontinued operations on the consolidated statement of operations (Note 15).

26. Also that same day, Colony hosted an earnings call with investors and analysts. While providing an overview of the Company's financial and operating results for the second quarter of 2019, Defendant Barrack stated, in relevant part:

> In Healthcare. What we said, we said we would successfully address the significant healthcare loan maturities in 2019 including the $1.725 billion GAHR loan and co-assets to better position our portfolio for strategically alignment. What we've done, we consummated an important partnership with Ventas, a leading health care REIT and refinanced the $1.725 billion GAHR debt on attractive terms and significantly derisked our Healthcare vertical.
>
> Four of six 2019 loan maturities have now been refinanced and the remaining two are expected to be refinanced or otherwise resolved by the year-end. 2019 was the year of liability management for Healthcare, which has gone extremely well.
>
> ***
>
> Given the significant appreciation and demand for industrial assets, we've decided that we are at an appropriate time to harvest our Industrial Real Estate business. We formally launched the sale process for our Industrial business. Should we receive offers at compelling levels, we anticipate a closing around year-end. In the meantime, we continue to build and expand the portfolio, as is evidenced by our recent Dermody acquisition of almost 12 million square feet at an acquisition cost of $1.2 billion.

27. In addition, when providing an overview of the Company's financial results for the quarter, Defendant Hedstrom stated, in relevant part:

> Starting with the Healthcare Real Estate segment, same-store portfolio NOI increased, 1% compared to first quarter 2019. On the financing front, we refinanced on very favorable terms, $1.7 billion in health care debt which was scheduled to mature, in December 2019.

> We contributed $175 million of equity, primarily to reduce the loan balance. And we expect that amount to decrease to approximately $90 million, on a net basis following the sale of certain assets that were previously encumbered, by the original debt, and are presently under contract to be sold.
>
> This refinancing along with previously completed refinancing transactions earlier this year, addresses four of the six health care loans maturing in 2019 or 87% of the consolidated outstanding principal balances.
>
> The remaining two health care, loans are expected to be refinanced or repaid by year-end. And with these health care maturities addressed, we can dedicate our focus, entirely to operations and strategy to maximize value within our portfolio.

28. In addition, when asked about the basis for the sale of the industrial portfolio, Defendant Tangen stated, in relevant part:

> Given what our cost basis is in that portfolio we -- and given where market values have gone, we would expect to realize a meaningful both accounting as well as taxable gain if we sort of sell where we're seeing other trades occur in the marketplace. So, as Tom said, more to come on that. We're mid-sale process. So, it's a little early to give guidance on that. ***But we would expect that there will be a pretty meaningful gain at the end of the day***.

(Emphasis added.)

29. Finally, when asked a question regarding impairments, Defendant Hedstrom stated, in relevant part:

> Look, as we realize small assets and as we call portfolios in our Healthcare and hospitality segments, that aren't held for sale. There is going to be noise and there's going to be gains and losses in those transactions as we go. ***I don't think that in -- for the year, we don't think that those gains and losses are that material to the operations of the business***.

(Emphasis added.)

30. On September 30, 2019, Colony issued a press release announcing that Blackstone would acquire Colony Industrial, the industrial real estate assets and affiliated industrial operating platform of Colony Capital, for an aggregate purchase price of $5.9 billion (the "September 2019 Press Release"). Specifically, the September 2019 Press Release touted, in relevant part:

> Colony . . . and Blackstone Real Estate Partners IX, an affiliate of Blackstone (NYSE: BX), announced today that they have entered into definitive agreements for Blackstone to acquire Colony Industrial, the industrial real estate assets and affiliated industrial operating platform of Colony Capital, for an aggregate purchase price of $5.9 billion.
>
> The Colony Industrial last-mile light industrial portfolio represents the substantial majority of the total transaction and comprises approximately 60 million square feet of infill, logistics assets across 465 light industrial buildings in 26 U.S. markets, with significant concentration in Dallas, Atlanta, Florida, northern New Jersey, and California. The transaction also includes Colony's 51% ownership interest in a 4 million square foot portfolio of bulk distribution assets and the affiliated operating platform which manages the properties of both portfolios. The aggregate net sales proceeds to Colony are expected to be in excess of $1.2 billion.
>
> This transaction comprises one of the highest quality portfolios of last-mile logistics assets in the U.S. Colony Industrial was formed in December 2014 through Colony Capital's acquisition of Cobalt Capital Partners, founded and led by Lewis D. Friedland. Since then, the portfolio has doubled in size and produced strong and consistent operating results.
>
> * * *
>
> Each of the agreements is subject to customary closing conditions, including third party consent for the sale of the 51% interest in the bulk

> industrial portfolio, and is expected to close in the fourth quarter of 2019.
>
> Willkie Farr & Gallagher served as legal counsel, and Morgan Stanley and Eastdil Secured served as financial advisors, and CBRE National Partners served as real estate advisor to Colony Capital. Simpson Thacher & Bartlett served as legal counsel to Blackstone.

31. The September 2019 Press Release also quoted several high-ranking members of both Blackstone's and Colony's management who touted the sale of Colony Industrial, stating, in relevant part:

> Darren Tangen, President of Colony Capital, stated, "We appreciate Blackstone has recognized the value that we've created at Colony Industrial and they are the ideal steward to lead this business during the next phase of its growth. Lew Friedland and the Colony Industrial team have executed flawlessly, achieving and even surpassing the goals of our original investment thesis five years ago. This sale allows Colony to both achieve compelling returns for our investors and generate significant liquidity, which among other uses, will help accelerate our ongoing transition into digital real estate and infrastructure."
>
> Nadeem Meghji, Head of Real Estate Americas at Blackstone, stated, "This acquisition of high quality warehouses demonstrates our continued strong conviction in logistics and positive e-commerce trends. As retailers continue to shorten delivery times and expand their last mile footprints, we believe warehouses in dense population centers will continue to experience outsized demand growth."
>
> Lew Friedland, Managing Director, Head of Colony Industrial, commented, "Last-mile logistics real estate continues to become an increasingly critical component of the global supply chain. We are pleased to have generated strong returns for our investors implementing this strategy and the portfolio and platform are extremely well-positioned for the positive market environment and continued growing demand for last-mile logistics space."

32. The statements referenced in ¶¶ 24-31 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Colony's sale of its industrial real estate portfolio and the bifurcation of Colony Credit Real Estate's portfolio were foreseeably likely to negatively impact Colony's financial and operating results; (ii) certain of Colony's remaining portfolio companies carried unsustainable levels of debt secured by hotels and healthcare-related properties and were thus at a significant risk of default; and (iii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Begins to Emerge**

33. On November 8, 2019, Colony announced its financial results for the third quarter of 2019. Among other results, the Company reported a GAAP net loss of $555 million, or $1.15 per share, which "notably included reductions of goodwill, real estate and provision for loan losses totaling $540.3 million . . . of which $387.0 million was attributable to the reduction of goodwill primarily as a result of the pending sale of the Company's industrial investment management business and related real estate portfolio, and the decrease in management fees from Colony Credit Real Estate, Inc. resulting from impairments related to its portfolio bifurcation."

34. On this news, Colony's stock price fell $0.48 per share, or 8.76%, to close at $5.00 per share on November 8, 2019. However, the Company's stock price continued to trade at artificially inflated prices throughout the remainder of the Class Period as a result of Defendants' continued misstatements and omissions concerning the financial health and stability of Colony's portfolio companies.

35. For example, on that same day, Colony hosted an earnings call with investors and analysts. While providing an overview of the financial and operating results of the third quarter of 2019, Defendant Barrack stated, in relevant part:

> Now looking ahead. Sale of industrial is anticipated to generate roughly $1.2 billion of net equity proceeds to Colony Capital, and we expect this transaction to close by year-end. ***As a result of the sale and other monetizations referenced earlier, Colony Capital will be equipped with a substantial quantum of liquidity at what we think will be a very appropriate time***.

(Emphasis added.)

36. In addition, while providing an overview of the Company's financial results for the quarter, Defendant Hedstrom stated, in relevant part:

> Starting with the Healthcare Real Estate segment, same-store portfolio NOI decreased 7% compared to second quarter 2019. Third quarter 2019 same-store net operating income included a one-time write-off of certain tenant rent receivables in the Hospitals portfolio. Excluding one-time items from the same-store NOI, the healthcare, same-store portfolio sequential quarter-to-quarter comparable net operating income would have decreased only 4%.
>
> On the financing front, we refinanced $212 million British pound loan on a portfolio of UK senior housing assets, with a new $223 million British pound, fully extended five-year loan at a substantially reduced interest rate. ***This refinancing, along with previously completed***

> ***refinancing transactions this year, addresses all of near-term healthcare real estate loan maturities***.
>
> ***.
>
> Subsequent to the June 2019 refinancing of the largest healthcare loan, the company unwound the entire swap in the aggregate amount of $365 million. For core FFO purposes, the company has excluded realized losses related to the swap, because the swap was an economic hedge against the refinancing risk of the maturing debt in the healthcare portfolio and core FFO does not reflect any realized gains or losses within our real estate verticals, or Investment Management businesses.

(Emphasis added.)

37. On February 28, 2020, Colony issued a press release during pre-market hours announcing its financial and operating results for its fourth fiscal quarter and full year ended December 31, 2019 (the "4Q19 Press Release"). With respect to hospitality and healthcare, the 4Q19 Press Release touted as a financial highlight, in relevant part: "[r]efinanced a £212 million loan on a U.K. portfolio of senior housing assets and a $48 million loan on skilled nursing facilities portfolios, which, together with previously completed refinancing transactions in 2019, addresses all material near-term healthcare real estate loan maturities." Moreover, the 4Q19 Press Release stated: "[w]ith respect to the healthcare and hospitality units, the Company successfully addressed all material near-term debt maturities allowing the respective business unit leaders to focus on improving cash flows through operational management and capital expenditures."

38. That same day, Colony hosted an earnings call with investors and analysts. While providing an update of the Company's financial and operating performance of the fourth quarter of 2019, Defendant Barrack stated, in relevant part:

> Healthcare: We refinanced in aggregate $2.2 billion of debt, including $1.725 billion and a GAHR loan refinancing. ***That addressed all of our material near-term maturities and puts us in a very good shape***. In addition, we sold three hospitals, generating $88 million of equity proceeds.

(Emphases added.)

39. In addition, while providing an overview of the Company's financial results for the quarter, Defendant Hedstrom stated, in relevant part:

> Moving to the healthcare real estate segment. The fourth quarter included a onetime recovery of rent receivables and termination fees, which resulted in an 11% same-store portfolio NOI increase from the third quarter. Excluding these onetime items, same-store NOI was flat. Same-store portfolio full year 2019 NOI was also flat compared to 2018. There were two significant transactions on the healthcare financing front. We refinanced the £212 million loan on a portfolio of UK senior housing assets with a new £223 million fully extended five-year loan at a substantially reduced interest rate. Additionally, we put in place a $48 million loan on a skilled nursing facility, lengthening the fully extended maturity date to 2024 at a similar interest rate. ***These refinancings along with previously completed refinancing transactions in 2019 address all near-term healthcare real estate loan maturities, which was a key 2019 objective***.

(Emphasis added.)

40. Finally, when asked about special dividends, Defendant Barrack stated, in relevant part:

> The legacy businesses are stabilized, they're doing actually better than we anticipated in a different way. So, one time when we talk about special dividend, we've got hospitality and healthcare, we trimmed out debt to stabilize the income stream, other than the last week, and with ramifications of coronavirus and volatility in this market are, we're comfortable keeping that cash flow going as we transition.

41. On March 2, 2020, Colony filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2019 (the "2019 10-K"). The 2019 10-K contained the following representations with respect to the condition of its portfolio of companies in the healthcare and hospitality segments:

> ***With respect to the healthcare and hospitality segments, the Company successfully addressed all material near-term debt maturities, allowing the respective business unit leaders to focus on improving cash flows through operational management and capital expenditures.*** The Company does not currently anticipate significantly shortened hold periods for its healthcare and hospitality assets solely as a result of its current strategy to focus on digital real estate and infrastructure. Holding periods will depend, in part, on prevailing economic conditions and market opportunities as they arise. ***In the fourth quarter of 2019, the Company continued to perform its impairment assessment of healthcare and hospitality assets in accordance with its policies and in the normal course of business, and applied its best estimate at this time based upon undiscounted future net cash flows to be generated by these assets over a long-term hold.***

(Emphases added.)

42. The statements referenced in ¶¶ 35-41 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading

statements and/or failed to disclose that: (i) certain of Colony's portfolio companies carried unsustainable levels of debt secured by hotels and healthcare-related properties and were thus at a significant risk of default; and (ii) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Fully Emerges**

43. On May 8, 2020, Colony issued a press release announcing its financial and operating results for the first quarter of 2020. In the press release, Colony reported that its portfolio companies had defaulted on $3.2 billion of debt secured by hotels and healthcare-related properties and that Colony had received a notice of acceleration covering $780 million of the defaulted debt.

44. On this news, Colony's stock price fell $0.08 per share, or 3.81%, to close at $2.02 per share on May 8, 2020.

45. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

46. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Colony securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective

disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

47. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Colony securities were actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Colony or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

48. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

49. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

50. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;
- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Colony;
- whether the Individual Defendants caused Colony to issue false and misleading financial statements during the Class Period;
- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;
- whether the prices of Colony securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and
- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

51. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

52. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;
- the omissions and misrepresentations were material;
- Colony securities are traded in an efficient market;
- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;
- the Company traded on the NYSE and was covered by multiple analysts;
- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and
- Plaintiff and members of the Class purchased, acquired and/or sold Colony securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

53. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

54. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

55. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

56. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

57. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Colony securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Colony securities and options

at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

58. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Colony securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Colony's finances and business prospects.

59. By virtue of their positions at Colony, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

60. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Colony, the Individual Defendants had knowledge of the details of Colony's internal affairs.

61. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Colony. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Colony's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Colony securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Colony's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Colony securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

62. During the Class Period, Colony securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the

materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Colony securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Colony securities was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Colony securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

63. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

64. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**(Violations of Section 20(a) of the Exchange Act Against The Individual Defendants)**

65. Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66. During the Class Period, the Individual Defendants participated in the operation and management of Colony, and conducted and participated, directly and indirectly, in the conduct of Colony's business affairs. Because of their senior positions, they knew the adverse non-public information about Colony's misstatement of income and expenses and false financial statements.

67. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Colony's financial condition and results of operations, and to correct promptly any public statements issued by Colony which had become materially false or misleading.

68. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Colony disseminated in the marketplace during the Class Period concerning Colony's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Colony to engage in the wrongful acts complained of herein. The

Individual Defendants therefore, were "controlling persons" of Colony within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Colony securities.

69. Each of the Individual Defendants, therefore, acted as a controlling person of Colony. By reason of their senior management positions and/or being directors of Colony, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Colony to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Colony and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

70. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Colony.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B. Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: May 26, 2020

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
ahood@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
(*pro hac vice* application forthcoming)
10 South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
pdahlstrom@pomlaw.com

***Attorneys for Plaintiff***

**CERTIFICATION PURSUANT**
**TO FEDERAL SECURITIES LAWS**

1. I, Alex Swartzendruber, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2. I have reviewed a Complaint against Colony Capital, Inc. ("Colony" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3. I did not purchase or acquire Colony securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4. I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Colony securities during the class period, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5. To the best of my current knowledge, the attached sheet lists all of my transactions in Colony securities during the Class Period as specified in the Complaint.

6. During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7. I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8. I declare under penalty of perjury that the foregoing is true and correct.

Executed 5-18-20
(Date)



(Signature)

Alex Swartzendruber
(Type or Print Name)

**Colony Capital, Inc. (CLNY)** **Swartzendruber, Alex**

**List of Purchases and Sales**

| Date | Purchase or Sale | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| 3/26/2020 | Purchase | 1,000 | $2.3500 |
| 3/26/2020 | Purchase | 559 | $2.3000 |
| 3/27/2020 | Purchase | 50 | $2.3100 |
| 3/27/2020 | Purchase | 50 | $2.3050 |
| 3/27/2020 | Purchase | 41 | $2.2700 |
| 3/27/2020 | Purchase | 426 | $2.2700 |
| 4/20/2020 | Purchase | 3 | $1.8700 |
| 4/14/2020 | Sale | (500) | $2.3500 |
| 4/14/2020 | Sale | (10) | $2.4202 |
| 4/13/2020 | Sale | (100) | $2.3500 |